UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

AMANDA KAY RENFROE,                                                              PLAINTIFF
INDIVIDUALLY AND AS THE
NEXT FRIEND OF S.W.R.

V.                                                       CIVIL ACTION NO. 3:18-CV-609-DPJ-LRA

ROBERT DENVER PARKER                                                           DEFENDANTS
AND RANDALL TUCKER

ORDER

Defendants Madison County Sheriff's Deputy Robert Denver Parker and Madison County Sheriff Randall Tucker seek summary judgment on Plaintiff Amanda Kay Renfroe's claims against them in their individual capacities. Mot. Summ. J. [17]. Renfroe asks the Court to strike one of Defendants' exhibits in support of their summary-judgment motion and to strike certain relief requested in Defendants' memorandum. Mot. to Strike [32]; Mot. to Strike [38]. For the following reasons, Defendants' motion is granted, and the individual-capacity claims are dismissed. Plaintiff's motion to strike the relief requested is granted, but her motion to strike Defendants' exhibit is considered moot. Finally, Plaintiff will be given 14 days to show cause why the official-capacity claims should not be dismissed.

I.      Facts and Procedural History

This case arises from the fatal shooting of Renfroe's husband, Michael Wayne Renfroe, by Defendant Parker on June 8, 2018.[1] That morning, Faye Burns Renfroe, Michael's mother, learned that Michael "was walking down the side of Highway 43 . . . completely naked." Am. Compl. [13] ¶ 11. According to the Amended Complaint, Faye "sought assistance from the

---

[1] All references to "Renfroe" in this order will be to Plaintiff Amanda Kay Renfroe. Other individuals who share that last name will be referred to by their first names.

Madison County Sheriff's Office . . . in safely and kindly taking Mike . . . into protective custody pending an involuntary commitment proceeding." *Id.* ¶ 14.

Later that evening, the Madison County Sheriff's Department received a 911 call from Willard McDaniel advising "that he suspected two people may have attempted to burglarize his truck." *Id.* ¶ 17. He "described the suspects as occupying a white or grey Ford pick-up truck with a 4-wheeler all terrain vehicle loaded in the back of the bed." *Id.* The dispatcher then alerted all available units that a possible burglary was in progress. Defendant Parker responded to the call and drove to the scene. He knew nothing about Faye's earlier call to the Madison County Sheriff's Department seeking to commit Michael.

What happened next was recorded on the dashcam in Parker's patrol car. Driving down a dark and otherwise deserted street, Parker came upon a white Chevrolet truck parked just off the road. When Parker stopped his patrol car a reasonable distance from the truck, Michael emerged, shirtless, from its driver's side. He took approximately 18 steps toward Parker with his arms extended out by his side and then—without verbal instructions from Parker—dropped to his hands and knees in the middle of the road. Seconds later, Michael suddenly rose and bull rushed toward Parker yelling, according to Parker, "Now, motherfucker, let's do this." Parker Decl. [17-1] ¶ 13. Parker stands 5'11" and weighs approximately 150 pounds; Michael was 6'2" and weighed 205 pounds.

In response, Parker first attempted non-lethal force by deploying his taser as Michael approached. Though the darts hit his chest, Michael continued charging, and approximately two seconds later, Parker's vehicle was visibly jostled when Michael apparently reached Parker. The rest of the encounter occurred beyond the camera's view, though an audible struggle can be heard in the background. Parker says Michael tried to choke him and struck him on the side of

the head while pinning Parker against his vehicle. According to Parker, he realized that he could not escape the assault, so he drew his weapon and fired four gunshots in rapid succession into Michael's center mass.[2]

All of this transpired quickly. The entire encounter—from the time Michael opened the door to his truck until the fourth gunshot was fired—lasted less than a minute. And only eight seconds elapsed between the time Parker deployed his taser and the final shot.

Renfroe filed this lawsuit against Parker and Sheriff Tucker, in their official and individual capacities, on August 31, 2018. In her Amended Complaint [13] she asserts a § 1983 claim for excessive force as well as state-law tort claims. Defendants moved for summary judgment "as to the individual liability claims asserted against them" on January 31, 2019, and the parties engaged in a brief period of immunity-related discovery. Mot. Summ. J. [17] at 1. Renfroe responded to Defendants' motion and filed two motions to strike, one aimed at an exhibit Defendants submitted and the other at a request for relief contained within Defendants' memorandum. Mot. to Strike [32]; Mot. to Strike [38]. The matters raised in all motions have been fully briefed, and the Court has jurisdiction and is prepared to rule.

II.    Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

---

[2] It is worth noting that Renfroe herself was present at the scene and in a position to observe what transpired, but she submitted no affidavit contradicting Parker's version of the incident.

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.    Analysis

In their motion, Defendants seek summary judgment on Renfroe's claims against them in their individual capacities. But in their memorandum, they urge the Court to also dismiss the official-capacity claims. Defs.' Mem. [24]. This request for relief drew one of Renfroe's motions to strike. The Court will first address the individual-capacity claims and then consider the arguments regarding the official-capacity claims.

4

A. Individual-Capacity Claims

1. Excessive-Force § 1983 Claims

a. Sheriff Tucker

In their summary-judgment memorandum, Defendants argued that Tucker—who was not personally involved in the incident with the Renfroes—is entitled to qualified immunity on the excessive-force claim. Defs.' Mem. [19] at 17–18. In response, Renfroe said only, "Defendant Randall Tucker is liable for all acts of his deputies, including the federal civil rights claims that the plaintiffs are asserting in this case." Pl.'s Resp. [40] at 12. But "[u]nder section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). Renfroe has not, therefore, "demonstrate[d] the inapplicability" of Tucker's qualified-immunity defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). Defendants' motion is granted as to the individual-capacity § 1983 claim against Tucker.

b. Deputy Parker

Parker also relies on qualified immunity as to the excessive-force claim asserted against him in his individual capacity. As the Fifth Circuit has summarized:

> [T]he doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. This immunity protects all but the plainly incompetent or those who knowingly violate the law. Accordingly, we do not deny immunity unless existing precedent must have placed the statutory or constitutional question beyond debate. The basic steps of this court's qualified-immunity inquiry are well-known: a plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.

*Anderson v. Valdez*, 845 F.3d 580, 599–600 (5th Cir. 2016) (citation and quotation marks omitted, punctuation altered).[3]

"If the defendant's conduct did not violate [the] plaintiff's constitutional rights under the first prong, . . . he is entitled to qualified immunity." *Blackwell v. Laque*, No. 07-30184, 2008 WL 1848119, at *2 (5th Cir. Apr. 24, 2008). If the defendant did violate the plaintiff's constitutional rights, "the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'" *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (quoting *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004)). Finally, "[o]nce an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* (noting that qualified-immunity defense alters usual summary-judgment burden of proof); *see McClendon*, 305 F.3d at 323 (noting burden is on plaintiff to "demonstrate the inapplicability of the defense").

To establish her excessive-force claim, Renfroe must prove Michael "(1) suffered some injury which (2) resulted from force that was clearly excessive to the need for force; (3) the excessiveness of which was objectively unreasonable." *Heitschmidt v. City of Hous.*, 161 F.3d 834, 839 (5th Cir. 1998). In the deadly force context, "[a]n officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." *Manis v. Lawson*, 585 F.3d

---

[3] Renfroe argues that the qualified-immunity doctrine "violates the separation of powers," so the Court should not apply it. Pl.'s Mem. [41] at 19. But this Court must follow binding precedent, and the Supreme Court continues to apply qualified immunity. *See Kisela v. Hughes*, 138 S. Ct. 1148 (2018).

839, 843 (5th Cir. 2009). "The question is one of 'objective reasonableness,' not subjective intent, and an officer's conduct must be judged in light of the circumstances confronting him, without the benefit of hindsight." *Id.* (quoting *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)). The Court must pay "careful attention to the facts and circumstances" of the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Finally, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Based on this test, Parker did not violate Michael's Fourth Amendment rights. Parker came upon Michael's vehicle—without backup—stopped on the side of a dark road. As far as Parker knew, Michael was suspected of burglarizing a truck on a homeowner's property. And while Michael initially went down on all fours in the middle of the road, he suddenly, and for no apparent reason, jumped up and charged Parker at full speed yelling, "Now, motherfucker, let's do this." After a taser failed to impede the attack, Parker—the considerably smaller man—found himself pinned to his vehicle while Michael choked and hit him. And as noted above, Parker "had mere seconds to assess the potential danger." *Kisela*, 138 S. Ct. at 1153 (reversing denial of qualified immunity). A reasonable officer under these circumstances would have perceived a threat of death or serious bodily harm, so the use of deadly force was not excessive.

Renfroe disputes this result both factually and legally. Factually, she takes issue with Parker's account, but she fails to create a material factual dispute. First, she disputes the quote Parker attributed to Michael because it was not recorded by the dashcam microphone. Pl.'s

7

Mem. [41] at 15. But the microphone was inside the patrol car, and Michael was not within range when he allegedly made the statement. Moreover, Renfroe cites no record evidence contradicting Parker's account. Indeed there is no record evidence of the incident other than Parker's testimony and the video. Second, she interprets the video as suggesting that Parker first exited his vehicle "seconds before" shooting Michael. Pl.'s Mem. [41] at 10. Even assuming that could help her case, the video supports Parker's explanation. The sound of Parker's door opening is heard approximately 42 seconds into the video, just before Michael got on the ground. In addition, the interior microphone clearly picked up the dispatcher, but Parker's voice is muffled and distant, indicating that he exited the vehicle. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that district court should have rejected plaintiff's testimony because it conflicted with videotape surveillance footage). Third, Renfroe says post-incident photographs of Parker belie his claim that Michael hit him. While the struggle with Michael may not have left marks on Parker's body, the audio from the dashcam and the jostling of the camera clearly support Parker's account that he was physically attacked just before he fired the shots. Finally, Renfroe disputes Parker's claim that he fired the gunshots while backing up because the dashcam video establishes that he fired the four shots in rapid succession. Pl.'s Resp. [40] at 5–6. But the fact that the shots were fired in rapid succession does not necessarily conflict with the shooter edging backwards over that short period of time. In sum, Renfroe fails to support her factual arguments with record evidence. But even assuming she is correct, the video still establishes that a reasonable officer would have been in fear of death or serious physical harm.

Legally, Renfroe primarily argues that "deadly force against a suspect can only be used [if] the suspect threatens the officer with a weapon, [ ] was necessary to prevent escape, and where feasible, some warning has been given." Pl.'s Mem. [41] at 6. Starting with the weapon,

8

it is factually true that Michael was unarmed. But a weapon is not necessary to create the risk of serious physical harm. *See Guerra v. Bellino*, 703 F. App'x 312, 317 (5th Cir. 2017) (finding use of deadly force against unarmed suspect was reasonable where suspect "charg[ed] almost directly toward [officer] in the dark from less than a car's length away"). As for the suggestion that deadly force may be used only to prevent escape, Renfroe relies on *Fraire v. City of Arlington*, 957 F.2d 1268 (5th Cir. 1992). *See* Pl.'s Mem. [41] at 6–7. But *Fraire* held that the officer properly used deadly force "to prevent his own death or great bodily harm" even though he was not "trying to hinder [a suspect's] escape." 957 F.2d at 1276. Finally, regarding the warning issue, there was little time to react, yet Parker did attempt non-lethal force before he was attacked.

Because Renfroe has not established a Fourth Amendment violation, Parker is entitled to qualified immunity on the § 1983 claim against him in his individual capacity. And even assuming a constitutional violation, Renfroe has not identified a sufficiently relevant case that would have put Parker on notice that his actions violated Michael's rights. *See Kisela*, 138 S. Ct. at 1153 (reversing denial of qualified immunity where facts did not fit clearly established law).[4]

2. State-Law Claims

Defendants argued in great detail that Renfroe's state-law claims against them in their individual capacities are likewise ripe for summary judgment. Defs.' Mem. [19] at 19–24. Renfroe ignored those arguments, focusing instead on the § 1983 excessive-force claim. Defendants' arguments appear meritorious, and Renfroe has otherwise abandoned the state-law individual-capacity claims. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir.

---

[4] Renfroe argues that the Court should disregard Defendants' expert's declaration. Pl.'s Mem. [41] at 11–14. The Court has not relied on either of the experts' submissions in ruling on the present motions.

2006) ("[Plaintiff's] failure to pursue this claim beyond [the] complaint constituted abandonment."). Summary judgment is warranted as to these claims.

  B. Official-Capacity Claims

Defendants did not include the official-capacity claims in their summary-judgment motion. Instead, they asked the Court to "*sua sponte* address [Renfroe's] claims against them in their official capacities" at the conclusion of their memorandum. Defs.' Mem. [19] at 24. This request drew a motion to strike from Renfroe, who correctly noted that, under the Federal Rules of Civil Procedure and the Court's Local Rules, all requests for relief must be made in the form of a motion. *See* Fed. R. Civ. P. 7(b)(1); L.U. Civ. R. 7(b). In response, Defendants argued that under Rule 56, the Court may grant summary judgment in the absence of a motion "so long as proper notice is given to the adverse party." Defs.' Mem. [44] at 1; *see* Fed. R. Civ. P. 56(f) ("Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; [or] (2) grant the motion on grounds not raised by a party.").

Renfroe is correct that Defendants' request for summary judgment on the official-capacity claims in their memorandum failed to comply with the Court's rules. So the request will be stricken. But, the Court hereby gives Renfroe notice, under Federal Rule of Civil Procedure 56(f), that it will consider Defendants' summary-judgment arguments with respect to the official-capacity claims, especially in light of the Court's conclusion that no constitutional violation occurred. *See Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013) ("All of Whitley's inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation.") (citing *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 467 (5th Cir. 2010)). Renfroe shall have fourteen days to show cause why the official-capacity claims

(under § 1983 and state law) should not be dismissed. Defendants may file a reply in support of their argument as to the official-capacity claims within seven days of Renfroe's response.

IV.     Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, Defendants' Motion for Summary Judgment [17] is granted, and the individual-capacity claims against Tucker and Parker are dismissed. Plaintiff's Motion to Strike [38] is granted, but Plaintiff will be given 14 days to show cause why Defendants are not entitled to summary judgment on the official-capacity claims. Failure to file a timely response will result in dismissal of those claims without further notice. Finally, insofar as the Court did not consider the subject exhibit, Plaintiff's Motion to Strike [32] is considered moot.

**SO ORDERED AND ADJUDGED** this the 7th day of June, 2019.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE