UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| AMANDA KAY RENFROE, INDIVIDUALLY AND AS THE NEXT FRIEND OF S.W.R. | PLAINTIFF |
| V. | CIVIL ACTION NO. 3:18-CV-609-DPJ-LRA |
| ROBERT DENVER PARKER AND RANDALL TUCKER | DEFENDANTS |

CONSOLIDATED WITH

| | |
|---|---|
| THE ESTATE OF MICHAEL WAYNE RENFROE AND AMANDA KAY RENFROE | PLAINTIFFS |
| V. | CIVIL ACTION NO. 3:19-CV-396-DPJ-LRA |
| ROBERT DENVER PARKER AND SHERIFF RANDALL TUCKER | DEFENDANTS |

ORDER

Plaintiff Amanda Kay Renfroe asks the Court to reconsider its decision awarding summary judgment to Defendants Robert Denver Parker and Randall Tucker, in their individual capacities, in this excessive-force case. Mot. [55]. She also asks for a Federal Rule of Civil Procedure 56(d) continuance of the deadline to respond to the Court's show-cause order as to the official-capacity claims. Mot. [52]. For the reasons that follow, the Rule 56(d) motion is denied, and the motion to alter or amend is granted as to the state-law claims.

I.  Facts and Procedural History

The facts are more fully set forth in the Court's June 7, 2019 Order [46]. Renfroe filed the lead case of these consolidated lawsuits against Parker and Tucker, in their individual and

official capacities, on August 31, 2018. She alleged excessive-force under 42 U.S.C. § 1983 and also asserted state-law tort claims. On January 31, 2019, Defendants asked for "summary judgment in their favor as to the individual liability claims asserted against them." Mot. [17] at 1; *see also* Mem. [19] at 1 (seeking summary judgment "based on their individual immunity to the plaintiffs' federal and state law claims"). And while not moving for summary judgment on the official-capacity claims, Defendants in their memorandum asked the Court to "*sua sponte* address [Renfroe's] claims against them in their official capacities." Mem. [19] at 24.

On June 7, 2019, the Court granted Defendants' motion as to the individual-capacity claims, but declined Defendants' invitation to award summary judgment on the official-capacity claims. Instead, the Court gave Renfroe notice that it would consider Defendants' arguments and gave her "14 days to show cause why Defendants are not entitled to summary judgment on the official capacity claims." Order [46] at 11; *see* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.").

In lieu of a response to the show-cause directive, Renfroe filed her Motion for Continuance Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure [52] on June 28, 2019. She thereafter filed her Motion to Alter or Amend Order [55]. Renfroe asks the Court to set aside summary judgment on the individual-capacity claims and permit her to engage in discovery before responding to the official-capacity claims. Defendants responded to both motions, and Renfroe declined the opportunity to file a timely reply in support of either.

II.     Analysis

    A.      Motion to Alter or Amend [55]

Renfroe invokes Federal Rule of Civil Procedure 59(e) in her motion seeking reconsideration of the summary-judgment order. But "Rule 59(e) governs motions to alter or amend a final judgment," and there is no final judgment in this case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). Instead, Renfroe's motion should be considered under Rule 54(b), which "allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise[] at any time' 'any order or other decision . . . [that] does not end the action.'" *Id.* (quoting Fed. R. Civ. P. 54(b)). Under the rule, the Court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990).

With this standard in mind, the Court addresses the four arguments Renfroe makes in support of her motion: (1) the Court failed to consider her expert's report; (2) the Court made impermissible credibility determinations; (3) Renfroe did not abandon her state-law claims against Defendants in their individual capacities; and (4) the Court did not address her argument challenging the constitutionality of qualified immunity.

        1.      Expert Opinion

Renfroe says the Court should have considered her expert's opinion when assessing the reasonableness of the force used against her husband. Specifically, she points out that her expert, Roy Taylor, opined that Parker's use of deadly force "was unnecessary and objectively unreasonable" and involved "a greater level of force than any other reasonable officer would have used under the same or similar circumstances in 2018." Taylor Report [55-1] at 8. But as

3

Defendants argued in their response to this motion, "[r]easonableness under the Fourth Amendment or Due Process Clause is a legal conclusion." *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (citation omitted). It is therefore error to allow expert testimony on whether an officer used unreasonable force. *Id.* And "[evidence] that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial[.]" *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (citation omitted). Renfroe offered no reply to this argument, and her expert's report does not create an issue of fact as to what occurred on the night of the shooting. Whether Parker's actions that night were reasonable is a question of law, and Taylor's contrary opinion receives no weight.

### 2. Weighing the Evidence

Renfroe says the Court "wrongly sided with the Defendants and made credibility determinations in favor of the Movants in several areas." Am. Mem. [57] at 6. She then lists five instances where she says the Court impermissibly credited Parker's version of events. Those examples fall within three basic categories, none of which demonstrate that the Court impermissibly "pick[ed] sides" as Renfroe argues. *Id.* at 5.[1]

---

[1] The examples Renfroe pointed to were

the Court's findings that:

1. Finally, Renfroe disputes Parker's claim that he fired the gunshots while backing up because the dashcam video establishes that he fired the four shots in rapid succession. But the fact that the shots were fired in rapid succession does not necessarily conflict with the shooter edging backwards over that short period of time. In sum, Renfroe fails to support her factual arguments with record evidence. But even assuming she is correct, the video still establishes that a reasonable officer would have been in fear of death . . . or serious physical harm. June 7, 2019 *Order* [docket #46, page 8].

4

First and foremost, under Rule 56(c)(1), Renfroe was required to present countervailing evidence regarding the events that night, something she could have easily done with her own affidavit. Instead, the Court was left with the dashcam video and Parker's record evidence that was largely consistent with that video. When a party fails to create a record, the Court is free to "consider the fact[s] undisputed for purposes of the motion." *See* Fed. R. Civ. P. 56(e)(2). Indeed the Court pointed this out in the first passage Renfroe cites as proof of impermissible evidence weighing. As the Court stated then, "Renfroe fails to support her factual arguments with record evidence." June 7, 2019 Order [46] at 8 (quoted in Pl.'s Am. Mem. [57] at 6).

Renfroe does, however, offer one example of record evidence she thinks the Court ignored. Parker testified that he was backing up between shots, something Renfroe rejects given the rapidity of the rounds. *See* Pl.'s Am. Mem. [57] at 8. Even in a light most favorable to her, the Court concluded that Parker could have been backing up while firing, and there was no other evidence contradicting his account. *See* June 7, 2019 Order [46] at 8. Regardless, the very next

---

2. She (Amanda Renfroe) interprets the video as suggesting that Parker first exited his vehicle seconds before shooting Michael. . . . Even assuming this could help her case, the video supports Parker's explanation. June 7, 2019 *Order* [docket #46, page 8].

3. Parker—the considerably smaller man—found himself pinned to his vehicle while Michael choked and hit him. June 7, 2019 *Order* [docket #46, page 7].

4. A reasonable officer under these circumstances would have perceived a threat of death or serious bodily injury, so the use of deadly force was not excessive. June 7, 2019 *Order* [docket #46, page 7].

5. Third, Renfroe says post-incident photographs of Parker belie his claim that Michael hit him. While the struggle with Michael may not have left marks on Parker's body, the audio from the dashcam and the jostling of the camera clearly support Parker's account that he was physically attacked just before he fired the shots. June 7, 2019 *Order* [docket #46, page 8].

Pl.'s Am. Mem. [57] at 6.

sentence of the Order states, "[E]ven assuming she is correct, the video still establishes that a reasonable officer would have been in fear of death or serious physical harm." *Id.* In other words, whether Parker was backing up is immaterial based on what happened before that.

Renfroe also takes issue with the Court's refusal to accept unsupported factual arguments that conflicted with the dashcam video. *See* Pl.'s Am. Mem. [57] at 6 (quoting June 7, 2019 Order [46] at 8). In the Order, the Court placed significant weight on the audio and visual evidence from the dashcam video. *See* June 7, 2019 Order [46] at 8. And it rejected unsupported assertions that conflicted with that evidence. *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that district court erred by failing to reject plaintiff's sworn testimony because it conflicted with videotape surveillance footage)). Renfroe now says the video failed to capture the actual shots—though they can be heard—and therefore the Court erred in relying upon that evidence. *See* Pl.'s Am. Mem. [57] at 8 (citing *Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013)). But this case is not like *Ramirez*, where a trial court rejected record evidence because it seemingly conflicted with a partial video of the event. 716 F.3d at 374. Here, Renfroe did not testify regarding the events, she did not offer record evidence creating a material fact as to those portions of Parker's account upon which the Court based its holding, and the video was consistent with the Court's finding that the force was not excessive. Indeed, the video essentially tells the story.

Finally, Renfroe says the Court was weighing evidence when it held that the force was not excessive. *See* Pl.'s Am. Mem. [57] at 6 (citing June 7, 2019 Order [46] at 7). But the reasonableness of deadly force "is a pure question of law" when no factual dispute has been created. *Scott*, 550 U.S. at 381 n.8.

6

In sum, there was no genuine issue of material fact as to what occurred on the night Parker fatally shot Renfroe's husband. The events depicted in the dashcam video along with unrebutted evidence establish—as a matter of law—that Parker did not use excessive force.[2]

3.  State-Law Claims

Turning to the state-law claims, the Court ruled that Renfroe failed to address, and therefore abandoned, her individual-capacity state-law claims. *See* June 7, 2019 Order [46] at 9–10. Renfroe says this was error because "[t]he only issue before the Court at this stage is and has been the affirmative defense of qualified immunity," which does not apply to claims under state tort law. Pl.'s Am. Mem. [57] at 9. She further claims that she never had an opportunity to address those claims. *Id.* at 9–10.

This issue is a little messy. In Defendants' summary-judgment motion, they plainly sought "summary judgment in their favor as to the *individual liability claims* asserted against them." Defs.' Mot. [17] at 1 (emphasis added). That would include individual-capacity state-law claims, which Defendants argued at length in their supporting summary-judgment memorandum. *See* Defs.' Mem. [19] at 19–24. Defendants did not, however, move for dismissal of the official-capacity claims and instead sought *sua sponte* dismissal in the body of their summary-judgment memorandum. *Id.* at 24.

---

[2] Renfroe argues that the five holdings she quoted in her motion for reconsideration are just illustrative. It is therefore worth noting that the factual issues Renfroe supported with citation to record evidence in her summary-judgment response were not material. She attacked, for example, Parker's testimony regarding his state of mind at the scene and his competence. *See, e.g.*, Pl.'s Resp. [40] at 6 (disputing whether Parker "feared for his life"); *id.* at 7 (noting that Parker had not renewed his driver's license). But "[t]he reasonableness inquiry in an excessive force case is an objective one." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Parker's state of mind or the status of his driver's license are irrelevant. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

7

Renfroe never substantively responded as to the individual- or official-capacity state-law claims. But she did file a separate motion to strike [38] with a supporting memorandum [39] that the Court granted. When it did so, the Court was candidly focused on the only argument Renfroe made in her supporting memorandum and held that "Defendants' request for summary judgment on the official-capacity claims in their memorandum failed to comply with the Court's rules" requiring such prayers to be filed in a motion. June 7, 2019 Order [46] at 10. But because Renfroe failed to address the individual-capacity state-law claims Defendants did move to dismiss, the Court concluded that she had abandoned those claims.

This was error. Although it would have been helpful for Renfroe to make her legal arguments in her memorandum—and perhaps file a Rule 56(d) motion—her motion to strike sought to strike Defendants' motion as it related to the individual-capacity state-law claims because the magistrate judge had stayed those issues. Nov. 27, 2018 Order [9] at 1 (staying all proceedings "except where it is related to the issue of qualified immunity"). Thus, Renfroe attempted to preserve the state-law claims and limit Defendants' summary-judgment motion to the qualified-immunity defense applicable to the federal claims. This is not a case where she simply abandoned a pleaded claim by failing to address it at all. *See Vela v. City of Hous.*, 276 F.3d 659, 678 (5th Cir. 2001). Accordingly, the Court grants her motion to vacate the ruling on the state-law individual-capacity claims.

### 4. Separation of Powers

The final issue is whether the Court ignored Renfroe's argument that qualified immunity violates separation of powers. Though relegated to a footnote, the Court did address it, holding: "Renfroe argues that the qualified-immunity doctrine 'violates the separation of powers,' so the Court should not apply it. Pl.'s Mem. [41] at 19. But this Court must follow binding precedent,

and the Supreme Court continues to apply qualified immunity. *See Kisela v. Hughes*, 138 S. Ct. 1148 (2018)." Order [46] at 6 n.3. The Court did not ignore her argument, and the holding remains correct.

B.     Rule 56(d) Motion [52]

Although the Court held that Defendants' official-capacity arguments were procedurally defective, they nevertheless raised a threshold legal question. Accordingly, the Order included the following:

> The Court hereby gives Renfroe notice, under Federal Rule of Civil Procedure 56(f), that it will consider Defendants' summary-judgment arguments with respect to the official-capacity claims, especially in light of the Court's conclusion that no constitutional violation occurred. *See Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013) ("All of Whitley's inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation.") (citing *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 467 (5th Cir. 2010)).

June 7, 2019 Order [46] at 10.

Instead of addressing this question, Renfroe responded with a motion under Federal Rule of Civil Procedure 56(d), which provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Motions under this rule "are 'broadly favored and should be liberally granted,'" but a nonmovant "'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.'" *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quoting *Culwell v. City of Forth Worth*, 468 F.3d 868, 871 (5th Cir. 2006); *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980)). "Rather, a request to stay summary judgment under Rule 56([d])

9

must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" *Id.* (quoting *C.B. Trucking, Inc. v. Waste Mgmt. Inc.*, 137 F.3d 41, 44 (1st Cir. 1998)).

Renfroe does not identify "specified facts, susceptible of collection within a reasonable time frame, [that] probably exist" which would "influence the outcome of the pending summary judgment motion." *Id.* Instead, without citation to any authority, she says the "justification requirement . . . is not applicable here" because discovery has been limited to immunity-related discovery. Bell Aff. [52-1] ¶ 1. She also argues that "[w]ith no discovery on the official capacity claims, it is premature for this Court to consider the defendants' summary judgment motion on the official capacity claims." Pl.'s Mem. [53] at 2.

To begin, "[d]iscovery is not a prerequisite to the disposition of a motion for summary judgment." *Skiba v. Jacobs Entm't, Inc.*, 587 F. App'x 136, 138 (5th Cir. 2014). Moreover, the question the Court posed is purely legal: Can Renfroe prevail on an official-capacity claim under § 1983 without showing an underlying constitutional violation? Renfroe never explains the discovery she needs or how it will help her overcome that legal issue. She has not complied with Rule 56(d)'s requirements.

Accordingly, Renfroe's motion under Rule 56(d) is denied. She is directed to file a response within seven days explaining why her official-capacity claims under § 1983 should not be dismissed. Failure to do so will result in an order dismissing the § 1983 official-capacity claims. Defendants may file a reply within seven days after Renfroe files her response.

III.   Conclusion

The Court has considered all arguments.  Those not addressed would not have changed the outcome.  For the foregoing reasons, Plaintiff's Motion for Continuance [52] is denied.  Her Motion to Alter or Amend [55] is granted as to the state-law claims but otherwise denied.  Plaintiff shall substantively respond to the show-cause order on her § 1983 official-capacity claims within seven days of the entry of this Order.

**SO ORDERED AND ADJUDGED** this the 13th day of August, 2019.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE